Nancy Ribaudo
Texas Bar I.D. 24026066
nancy.ribaudo@kellyhart.com
Katherine T. Hopkins
Texas Bar I.D. 24070737
katherine.hopkins@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: 817/332-2500
Telecopy: 817/878-9774

*Proposed Counsel for Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| WOODBRIDGE PARTNERS, LP, et al [1] | § | CASE NO. 24-41520 |
| | § | |
| Debtors. | § | **(Jointly Administered)** |
| | § | |
| | § | **Expedited Hearing Requested** |

**EMERGENCY JOINT MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, AND
(IV) SETTING A FINAL HEARING**

> **Emergency relief has been requested. Relief is requested not later than
> 5:00 p.m. on July 15, 2024.  If you object to the relief requested or you believe
> that emergency consideration is not warranted, you must appear at the
> hearing if one is set, or file a written response prior to the date that relief is
> requested in the preceding paragraph.  Otherwise, the Court may treat the
> pleading as unopposed and grant the relief requested.**

The above-referenced debtors and debtors-in-possession (each a "<u>Debtor</u>" and

collectively, the "<u>Debtors</u>") file this emergency motion (the "<u>Motion</u>") with the Court for entry

of interim and final orders pursuant to §§ 361, 362, 363, and 507 of title 11 of the United States

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are as follows: Woodbridge Partners, L.P. (6716); Brentwood Nursery, Inc. (3393); Seville
Farms, Inc. (6380); Integrated Botanics, LP (7617); GB2 Holdings, LLC (0872); and Hillister Farms, L.L.C. (5295).

Code (11 U.S.C. §§ 101 *et seq.*, as amended, the "<u>Bankruptcy Code</u>") and Rules 4001, 6004(h), and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"): (i) authorizing Debtors to use cash collateral of Greater Nevada Credit Union ("<u>GNCU</u>") under the terms and conditions set forth herein; (ii) granting adequate protection; (iii) modifying the automatic stay to the extent necessary to implement the relief requested herein; and (iv) scheduling a final hearing with respect to the relief requested herein (the "<u>Final Hearing</u>").  In support, Debtors show:

## I.    <u>JURISDICTION AND VENUE</u>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are §§ 361, 362, 363 and 507 of the Bankruptcy Code and Bankruptcy Rules 4001, 6004(h) and 9014.

## II.    <u>BACKGROUND</u>

### A.    General Procedural Background

3.      On May 1, 2024 ("<u>Petition Date</u>"), Woodbridge Partners, L.P. ("<u>Woodbridge</u>"), Seville Farms, Inc. ("<u>Seville</u>"), Hillister Farms, L.L.C. ("<u>Hillister</u>"), GB2 Holdings, LLC ("<u>GB2</u>"), Brentwood Nursery, Inc. ("<u>Brentwood</u>"), and Integrated Botanics, LP ("<u>IBOT</u>") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.  On May 13, 2024, the Court entered its order jointly administering the Debtors cases for administrative purposes only.  [Docket No. 34].

4.      No trustee or examiner has been appointed in these bankruptcy cases.  No official committee of unsecured creditors has been appointed.

**B.      Business Overview**

5.      The Debtors are a family owned wholesale greenhouse business providing high quality annuals, perennials and ground covers to garden centers across Texas for more than 25 years.

6.      The Debtors are all related entities and part of the Seville Farms business, now headquartered in Mansfield, Texas.  Seville Farms operated the facilities across Texas with facilities located in Mansfield, Waxahachie, Schulenburg, Los Fresnos, Tyler and New Summerfield, among other places, to grow products and plants appropriate for the regional climate and temperature zones.

7.      Woodbridge owns the real property and five facilities located in Mansfield, Waxahachie, Schulenburg, Los Fresnos and Tyler, Texas, used by Seville Farms, with Brentwood owning a portion of the real property (twenty (20) acres) located in Mansfield, Texas.

8.      IBOT conducted growing operations out of the Mansfield location and focused on the production of starter plants used to grow finished goods for customers.  Hillister operated a leased facility and had similar operations as Seville Farm.  GB2 Holdings, LLC ("GB2") serves as the general partner of a related entity, Quick Turn Merchandising, LP ("Quick Turn") that provided support services to the Debtors.

**C.      Prepetition Indebtedness**

9.      Prior to the Petition Date, and as more fully set forth in *the Declaration of William Brentlinger in Support of First Day Motions*, Dkt. No. 18, which is fully incorporated herein by reference, Debtors entered into two loan agreements with Greater Nevada Credit Union

("GNCU"), including:  (a) that certain Loan Agreement and Promissory Note, dated August 16, 2018, in the principal amount of $15,000,000, by and between GNCU as lender, and Seville, Woodbridge, Hillister, Brentwood, IBOT, GB2, Quick Turn, L.P., Robert Brentlinger and William Brentlinger as borrowers (the "GNCU/USDA Loan); and (b) that certain Business Loan Agreement and Note, dated August 16, 2018, in the original amount of $2,200,000, by and between GNCU as lender, and Seville, Hillister, Woodbridge, IBOT, and Quick Turn as borrowers, and Brentwood, Robert Brentlinger and William Brentlinger as guarantors (the "GNCU/SBA Loan" and together with the GNCU/USDA Loan, the "GNCU Loans" and the GNCU Loans, together with all related credit and security documents, the "GNCU Loan Documents").  To secure payment of the GNCU Loans, the Debtors granted GNCU liens and security interests (collectively, the "GNCU Prepetition Liens") in certain real and personal property including cash collateral ("Cash Collateral") as defined in the various GNCU Loan Documents (the "Prepetition Collateral").

10.     Certain of the Debtors also entered into pre-petition loan agreements and security agreements with the U.S. Small Business Administration ("SBA") and Iron Horse Credit, LLC "Iron Horse").  Specifically, Seville, Woodbridge, Hillister, Brentwood, IBOT, GB2 and Quick Turn as borrowers, Iron Horse as lender, and Robert Brentlinger and William Brentlinger as guarantors, entered into a Credit and Security Agreement, dated January 1, 2020 (as subsequently amended) in the maximum amount of $12,000,000 (the "Iron Horse Loan").  Pursuant to that certain Intercreditor and Subordination Agreement dated January 21, 2020, between Seville Farms, Hillister, IBOT, Brentwood, GB2, Woodbridge and Quick Turn, GNCU and Iron Horse, GNCU agreed that Iron Horse held a security interest in inventory senior to

GNCU, and Iron Horse agreed that GNCU held a security interest in equipment senior to Iron Horse.

11.      Prior to the Petition Date, Seville also entered into that certain Loan Authorization and Agreement, and Promissory Note, dated May 17, 2020, as borrower, in the principal amount of $150,000, with SBA as lender ("SBA Disaster Loan").  In connection therewith, Seville executed that certain Security Agreement dated May 17, 2020, granting SBA a security interest certain personal property of Seville.

12.      Prior to the Petition Date, the Debtors sold inventory and equipment with proceeds paid to either Iron Horse or GNCU as the respective senior secured lender as well as funding operational expenses in the ordinary course of business.

13.      As of the Petition Date, none of the Debtors held any collateral relating to the SBA Disaster Loan or Iron Horse Loan that is of any material value and not otherwise subject to the senior lien of GNCU.[2]

**D.      Need for Use of Cash Collateral**

14.      Debtors need immediate access to their cash to pay employees on a post-petition basis and to pay for ordinary operational expenses.  If Debtors are unable to pay employees and pay for continuing operating expenses, their ability to effectively maintain assets will be jeopardized.

### III.      REQUESTED RELIEF

15.      By this Motion, the Debtors respectfully request authorization and approval, pursuant to §§ 361, 362, 363, and 507 of the Bankruptcy Code and Bankruptcy Rules 4001, 6004(h) and 9014 to use Cash Collateral of GNCU to pay expenses in accordance with the

---

[2]      Any remaining inventory of Seville Farms has de minimis value.  Remaining equipment of Seville Farms has a value of approximately $50,000.

proposed budget attached hereto as **Exhibit A[3]** (the "Budget") on an interim and final basis and, after a final hearing on a final basis in accordance with the proposed Interim and Final Orders attached hereto as **Exhibits B and C[4].**

16.     Without use of cash collateral, Debtors lack sufficient liquidity to meet ongoing obligations and will be unable to continue operations throughout these cases.  Debtors intend to use cash collateral to fund payroll and operating expenses.  Debtors' estates will be immediately and irreparably harmed absent approval of the use of cash collateral to pay such ongoing and necessary expenses to support operations and maintain assets..

17.     Debtors request that an interim hearing be set at the Court's earliest convenience (the "Interim Hearing") to consider entry of an interim cash collateral order.  Debtors further request that a final hearing be set pursuant to Bankruptcy Rule 4001(c)(2) (the "Final Hearing") to consider entry of a final order.

### IV.    STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(b)(1)(B)

18.     A summary of the proposed material terms of the use of Cash Collateral include the following and identify the material provisions of the Interim Order[5]:

**A.    Valid Prepetition Liens:**  The GNCU Prepetition Liens constitute valid and perfected liens on the Prepetition Collateral.  *See* Interim Order, ¶ F.

**B.    Entities with Interests in the Cash Collateral:**  GNCU holds an interest in the Cash Collateral.  *See* Interim Order, ¶ K.

---

[3]     The Budget does not include the actual amounts for professionals' fees and expenses for May 2024.  Such amounts are subject to the budgeted amounts included therein and shall be subject to further Court approval.
[4]     The Final Order will be supplemented in the near future.  It will be in substantially the same form as the Interim Order.
[5]     The following summary and all other descriptions herein of the terms of the proposed order are provided for convenience only, and to the extent that the following summary and all other descriptions herein of the terms of the proposed interim and final orders are inconsistent, the terms of the interim and final cash collateral orders shall control.  Capitalized terms not described in the following summary shall have the meanings ascribed to below in this Motion.

**C.**      **Purpose for the Use of Cash Collateral:**   The Debtors require use of Cash Collateral to preserve the value of Debtors' businesses, assets and properties, satisfy payroll obligations and other necessary working capital and general corporate purposes of the Debtors consistent with the Budget attached hereto as **Exhibit A**, and to pay necessary and reasonable fees incurred in connection with this Case.  *See* Interim Order, ¶ M.

**D.**      **Adequate Protection:**   As adequate protection for the use of GNCU's Cash Collateral, the proposed interim and final orders provide the following:

(i)      <u>Replacement Liens</u>. Subject to any otherwise unavoidable and duly perfected liens existing on the Petition Date, GNCU is hereby granted continuing, valid, automatically perfected nonavoidable and enforceable replacement liens (the "<u>Replacement Liens</u>"), in and upon all of the assets (and proceeds thereof) of the Debtors described in the GNCU Loan Documents, including but not limited to, accounts receivable, and Cash Collateral, whether such property (or proceeds thereof) was owned on the Petition Date or acquired by any Debtor after the Petition Date (excluding all causes of action under chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>").  The Replacement Liens granted herein: (a) are in addition to the GNCU Prepetition Liens; (b) are and shall be valid, perfected, enforceable, and effective as of the date of the entry of this Interim Order without further action by the Debtors or GNCU, and without the necessity of the execution, filing, or recordation of any financing statements, security agreements, mortgages, or other documents; (c) shall secure the payment of indebtedness to GNCU to the fullest extent of the law, of the Cash Collateral and any other GNCU Prepetition Collateral; and (d) except for *ad valorem* property taxes, shall not hereafter be subordinated to or made *pari passu* with any other lien or security interest arising after

the Petition Date under Bankruptcy Code section 364(d) or otherwise, absent the consent of GNCU.  The Replacement Liens shall have the same priority as existed on the Petition Date.  If, however, GNCU, in its sole discretion, shall determine to file any such financing statements, mortgages, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the automatic stay is hereby lifted to allow the filing and recording of a certified copy of this Interim Order or any such financing statements, mortgages notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded on the date of this Interim Order. *See* Interim Order, ¶ 10(i).

(ii)     Adequate Protection Superpriority Claims. As further adequate protection of the interests of GNCU in the GNCU Prepetition Collateral against any diminution in value of such interests caused by a failure of adequate protection under § 507(b) of the Bankruptcy Code, GNCU is granted, subject to the Carve-Out, as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each Debtor's Case and any Successor Cases (the "Adequate Protection Superpriority Claims").  *See* Interim Order, ¶ 10(ii).

(iii)     Priority of the Adequate Protection Superpriority Claims. Except as set forth in the Interim Order, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever; *provided, however*, that the Adequate Protection Superpriority Claims shall be subject to the Carve-Out. Notwithstanding any provisions of the Interim Order, no Adequate Protection Liens shall attach to, and no Adequate Protection Superpriority Claims shall

be recoverable from Avoidance Actions unless otherwise ordered by the Court.  *See* Interim Order, ¶ 10(iii).

(iv)        Payment of GNCU Costs and Expenses.  All reasonable out-of-pocket costs and expenses of GNCU, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses, shall be paid from the proceeds of the sales of the Collateral so long as the liquidated value of the Collateral exceeds the outstanding amount of the GNCU Loans as provided under § 506(a) of the Bankruptcy Code.  See Interim Order, ¶ 10(iv).

(v)        Reporting.  Debtors shall timely provide GNCU, the Committee, if appointed, and the U.S. Trustee with (a) a monthly report comparing actual collections and expenditures (by expense category) on a cash basis to those set forth in the Budget (a "Reconciliation Report"); (b) monthly financial statements to be delivered to GNCU not later than twenty (20) days after the conclusion of each month in which any Debtor uses Cash Collateral, (c) all documents and information submitted by Debtors to the United States Trustee, and (d) upon the reasonable request of GNCU, such other information pertaining to each Debtor's operations, financial affairs, and the GNCU Prepetition Collateral.  *See* Interim Order, ¶ 10(v). Access to Collateral.  Upon the request of GNCU, the Debtors shall permit GNCU, respectively, reasonable access to the GNCU Prepetition Collateral and each Debtor's books and records to conduct inspections and audits.  *See* Interim Order, ¶ 10(vi).

(vi)      <u>Successor Case</u>.  The adequate protection granted to GNCU in the Interim Order, including without limitation the Replacement Liens, shall be enforceable against the Debtors, their estates, and any successors thereto, including without limitation, any trustee or other estate representative appointed in this Chapter 11 case, any case under Chapter 7 of the Bankruptcy Code upon a conversion, or in any other proceeding superseding or related to any of the foregoing (collectively, the "**Successor Case**").  *See* Interim Order, ¶ 10(vii).

(vii)      <u>No Avoidance of Replacement Liens</u>.  The Replacement Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code and shall not be subject to subordination, impairment, or avoidance for all purposes in this Case and any Successor Case.  *See* Interim Order, ¶ 10(viii).

**E.      Restrictions on Use of Cash Collateral:**  The Debtors are authorized to use Cash Collateral during the period from the Petition Date through and including the Termination Date subject to and solely in accordance with the terms, conditions, and limitations set forth in the Interim and the Budget, without further approval by this Court; *provided* that all use of cash by the Debtors shall be deemed to be made first from any cash that is not Cash Collateral and thereafter from the Cash Collateral.  *See* Interim Order, ¶ 3.

**F.      Carve Out:**  GNCU has agreed to a Carve-Out of its Prepetition Collateral equal to the sum of the amounts provided for as follows (the "<u>Carve-Out</u>"):  (a) all fees required to be paid to the clerk of the Court and to the Office of the U.S. Trustee under section 1930(a)(6) of title 28 of the United States Code; (b) all court-approved accrued and unpaid fees, disbursements, costs, and expenses (the "<u>Allowed Professional Fees</u>") incurred by professionals or professional firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code and

any statutory committee (each, a "Committee") appointed in these chapter 11 cases pursuant to section 1103 of the Bankruptcy Code (collectively, the "Professionals" or "Professional Persons"), which Allowed Professional Fees: (i) are allowed by this Court, at any time, whether by interim order, procedural order, or otherwise; (ii) were incurred (regardless of when invoiced or applied for) on or after the Petition Date, and prior to the Termination Date (*defined below*), and (iii) are provided in the Approved Budget, with which the Debtors shall use reasonable best efforts to comply, or to which GNCU has otherwise expressly consented; and (c) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $80,000.00 for all such Professionals, incurred after the first business day following delivery by GNCU of the Termination Notice (*as defined herein*), to the extent allowed at any time, whether by interim order, procedural order, or otherwise. All Carve-Out payments shall be subject to the provisions of 11 U.S.C. § 327, 11 U.S.C. § 329 and 11 U.S.C. § 330. Notwithstanding anything to the contrary in this Interim Order or any subsequent interim or final order relating to use of Cash Collateral, (a) the Carve-Out (including any amendment or modification thereto) shall be reduced dollar-for-dollar by such amount of Debtors' post-petition net cash that the Court finds is proceeds of GNCU's Prepetition Collateral; and (b) Allowed Professional Fees shall be paid only to the extent cash is available after (i) the sale of the Debtor's real or personal property pursuant to a confirmed chapter 11 plan of reorganization and/or liquidation or section 363 of the Bankruptcy Code. GNCU reserves the right to object to any application for professional fees. *See* Interim Order, ¶ 5.

G.     **Termination on Use of Cash Collateral:**  The Debtors' right to use Cash Collateral on a consensual basis in the Interim (and Final) Order shall terminate ("Termination Date") on the earliest of: (a) consummation of a plan of reorganization and/or liquidation in this

Case; (b) failure of the Debtor to file a plan of reorganization and/or liquidation by August 1, 2024; or (c) upon written notice by GNCU to the Debtors after the occurrence and continuance of any of the following events ("Events of Default") beyond any applicable grace period:

(i)      Failure of the Debtors to comply in any material respect with the terms of the Interim Order and such failure continues without remedy for more than ten (10) business days after written notice thereof is provided to the Debtors as required herein;

(ii)      Granting, creating, incurring or suffering to exist by any Debtor any liens or security interests other than: (A) those granted pursuant to the Interim Order; (B) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (C) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (D) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (E) any other liens or security interests that are senior to the GNCU Prepetition Liens, unless GNCU otherwise consents;

(iii)      Entry of any order reversing, amending, supplementing, staying, vacating or otherwise modifying the Interim Order without the written consent of GNCU;

(iv)      Entry of an order granting relief from the automatic stay to the holder or holders of any security interest (other than GNCU) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of any Debtor;

(v)      From the Petition Date to the Termination Date, the creation of any claims or charges, or the entry of any order of this Court authorizing any claims or charges, other

than as permitted under the Interim Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the GNCU Prepetition Loans, or there shall arise or be granted by this Court (A) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code, including the 507(b) Claims, or (B) any lien on the GNCU Prepetition Collateral or Post-Petition Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in the Credit Agreement or in the Interim Order (but only in the event specifically consented to by GNCU), whichever is in effect;

(vi)    Any filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the GNCU Prepetition Liens securing the Pre-Petition Loans or asserting any other cause of action against and/or with respect to the Pre-Petition Loans or the GNCU Prepetition Collateral, except as to application of payments and payoff amounts due and owing thereunder;

(vii)   Dismissing or converting this proceeding to a Chapter 7 case, or appointing a Chapter 11 Trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); *provided* that the appointment by this Court of a trustee or other fiduciary of any Debtor's estate for the limited purpose of investigating, commencing or prosecuting Avoidance Actions on behalf any Debtor's estate shall not constitute a default under this subparagraph;

(viii)   Terminating or reducing by the Court the period pursuant to section 1121 of the Bankruptcy Code during which any Debtor has the exclusive right to file a plan or plans and solicit acceptances thereof.  *See* Interim Order, ¶ 12(i)-(viii).

**H.     Challenge Period:**  Notwithstanding the foregoing, and in accordance with the Complex Procedures, all parties in interest, other than the Debtors, shall have seventy-five (75) days from entry of this Interim Order, and as to an official committed appointed under 11 U.S.C. § 1102, no more than ninety (90) days from the Petition Date, to investigate, challenge and not be bound by the Debtors' stipulations as to the validity and perfection of the GNCU Prepetition Liens on the Prepetition Collateral by filing a complaint or motion seeking authority to commence litigation as a representative of the estate.  *See* Interim Order, ¶ 17.

## V.     <u>BASIS FOR RELIEF</u>

**A.     Debtors' Request to Use Cash Collateral and Proposed Adequate Protection is Appropriate**

19.     Under § 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or approval from the Court upon a finding that the secured party's interest can be adequately protected.  Section 361 of the Bankruptcy Code provides a non-exhaustive list of factors that may constitute adequate protection.  A determination of adequate protection is decided on a case-by-case basis and involves a consideration of the "nature of the creditor's interest in the property, [and] the potential harm to the creditor as a result of the property's decline in value of the method of protection."  *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986).

20.     Here, without authority to use the Cash Collateral of GNCU, Debtors will not have sufficient available sources of working capital to pay for normal operating expenses and thus will be unable to continue to operate and maintain assets.  Without access to the use of Cash

Collateral, Debtors ability to manage, administer and preserve the Debtors' estates would be immediately and irreparably harmed, thereby materially impairing the estates and creditors.

21.     The disruption in the use of Cash Collateral will adversely affect the ability of Debtors to pay employees and utilities and would result in the loss of employees and diminished value of estate property including collateral securing the interests of various creditors.  The use of Cash Collateral is critical to the Debtors in order to maintain assets.

22.     The Budget provides for payment of maintenance and related costs, including Debtors' professionals engaged in these chapter 11 cases.  As long as secured creditors are adequately protected or consent, the use of the Cash Collateral to pay Debtors' professionals is allowed.  Here, GNCU is adequately protected and moreover, has consented to Debtors' use of Cash Collateral pursuant to the Budget and proposed interim an final orders.  Debtors' use of the Cash Collateral of GNCU will not impact the liens or security interests of the other secured creditors, namely, SBA.

23.     Section 361(2) of the Bankruptcy Code specifically provides that adequate protection may be provided by "providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property."  11 U.S.C. §361(2); *In re Gary L. Zars*, 434 B.R. 421, 431 (W.D. Tex. 2010) ("Adequate protection for such a creditor holding a secured interest or cash collateral would include . . . additional or replacement liens").

24.     GNCU is entitled, pursuant to Bankruptcy Code §§ 361 and 363(c) and (e), to adequate protection of its interests in the Prepetition Collateral, including Cash Collateral, equal to the aggregate diminution in value of its interests in the Prepetition Collateral.  Accordingly,

Debtors seek to provide GNCU with the form of adequate protection provided in the Interim Order.

25.     For this reason, the Court should approve Debtors use of cash collateral as outlined in the proposed cash collateral order.

**B.      The Automatic Stay should be Modified on a Limited Basis**

26.     The proposed Interim Order provides that the automatic stay shall be modified to (i) permit the Debtors to grant GNCU the Adequate Protection Liens and Adequate Protection Superpriority Claims; (ii) permit the Debtors to perform such acts as GNCU may reasonably request to assure the perfection and priority of the liens granted herein; (iii) permit the Debtors to incur all liabilities and obligations to GNCU under the interim and final orders; and (iv) authorize the Debtors to pay, and GNCU to retain and apply, payments made in accordance with the terms of the interim and final orders.  Accordingly, the Court should modify the automatic stay to the extent contemplated in the proposed Interim Order and final order.

**C.      Immediate Access to Cash Collateral is Necessary**

27.     Federal Rules of Bankruptcy Procedure 4001(b) and 4001(c) provide that a final hearing on a motion to use cash collateral or may not be commenced earlier than fourteen days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary emergency hearing on the motion and authorize the use of cash collateral or the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.  Debtors request that the Court conduct an emergency interim hearing on this motion to consider Debtors' request that the Interim Order be entered.  Debtors need to use cash collateral to pay payroll and other operating expenses.  The terms and conditions of the Budget are fair and reasonable and reflect the exercise of Debtors' prudent

business judgment consistent with the fiduciary duties of a debtor-in-possession.  The cash collateral that Debtors propose to spend in the Budget will be in an amount necessary to prevent the Debtors from suffering immediate and irreparable harm. Accordingly, Debtors request entry of the Interim Order as soon as possible after a hearing to be conducted within one day of the filing of this motion.

28.     To implement the foregoing successfully, Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## VI.   CONCLUSION

29.     Debtors request that the Court enter an order:  (i) authorizing Debtors to use cash collateral in accordance with the terms and conditions set forth in this motion, the Budget, and the proposed Interim Order; (ii) scheduling a preliminary hearing on this motion at the Court's earliest convenience (iii) scheduling a final hearing on this motion on a date that is not earlier than fourteen days following the filing of this Motion; (iv) waiving the notice requirements of Rule 6004(a) and the 14-day stay provided by Rule 6004(h); and (v) granting such further relief as appropriate.

Respectfully submitted,

By: */s/ Nancy Ribaudo*
    Nancy Ribaudo
    Texas Bar I.D. 24026066
    nancy.ribaudo@kellyhart.com
    Katherine T. Hopkins
    Texas Bar I.D. 24070737
    katherine.hopkins@kellyhart.com
    KELLY HART & HALLMAN LLP
    201 Main Street, Suite 2500
    Fort Worth, Texas 76102
    Telephone:   817/332-2500
    Telecopy:   817/878-9774

*Proposed Counsel for Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 3, 2024, I caused to be served true and correct copies of the following documents via ECF notification, where available, and via First Class Mail upon all parties on the attached service list.

*/s/ Katherine T. Hopkins*
Katherine T. Hopkins

Woodbridge Partners, L.P.
Case No. 24-41520-elm11
Special Notice List
06/21/24  3943462_1

**U.S. TRUSTEE:**

United States Trustee
1100 Commerce Street
Room 976
Dallas, TX  75202

**DEBTOR'S SECURED CREDITORS:**

Iron Horse Credit LLC
6620 Southpoint Drive South, Ste. 230
Jacksonville, FL 32216-0964

Iron Horse Credit LLC
Attn: Steven J. Garofalo
9811 W. Charleston Blvd., Ste. 2-427
Las Vegas, NV 89117-7528

Small Business Administration
4300 Amon Carter Blvd.
Suite 114
Fort Worth, TX 76155-2652

U.S. Small Business Administration
Office of Disaster Assistance
14925 Kingsport Rd.
Fort Worth, TX 76155-2243

U.S. Small Business Administration
409 3rd St., SW
Washington, DC 20416-0002

Arkansas Dept. of Finance and Admin.
2455 Washington Ave.,
Ste. 107
Conway, AR 72032

Louisiana Dept. of Revenue
617 N. 3rd Street
Baton Rouge, LA 70802

LSQ Funding Group, L.C.
Attn: William Samuelson
2600 Lucien Way, Suite 100
Maitland, FL 32751

LSQ Funding Group, L.C.
Attn: General Counsel
315 E. Robinson St., Ste. 200
Orlando, FL 32801

Mississippi Dept. of Revenue
500 Clinton Center
Clinton, MS 39056

**GREATER NEVADA CREDIT UNION:**

Greater Nevada Credit Union
Attn: Anastasi Jellum, P.A.
14985 60th St. North
Stillwater, MN 55082-6326

Greater Nevada Credit Union
c/o Ross, Smith & Binford, P.C.
Attn: Frances A. Smith
700 N. Pearl Street, Suite 1610
Dallas, TX 75201-7459

Greater Nevada Credit Union
Attn: Greater Comm. Lending Svcs.
451 Eagle Station Lane
Carson City, NV 89701-8402

**20 LARGEST UNSECURED CREDITORS FOR EACH DEBTOR:**

**SEVILLE FARMS:**

Alexander Plant Farm Inc.
1214 Piney Woods Road
Alleyton, TX 78935

AmeriGas - Arlington
PO Box 660288
Dallas, TX 75266-0288

Aydani Wholesale Nursery LLC
700 Columbia Road 61
Magnolia, AR 71753

Ball Horticultural Company
Attn: Alene Mangino
622 Town Road
West Chicago, IL 60185

BWI
PO Box 990
Nash, TX 75569

Container Centralen, Inc.
855 East Plant Street, Suite 1200
Winter Garden, FL 34787

Del Norte Harvesting LLC
518 West Columbia Ave.
Batesburg, SC 29006

Harrell's LLC
ATTN: Bill Schoppman
PO Box 935358
Atlanta, GA 31193-5358

Iron Horse Credit LLC
6620 Southpoint Drive South, Suite 230
Jacksonville, FL 32216

Landmark Plastic Corp
Attn: Joyce Vasilev
PO Box 742243
Atlanta, GA 30374-2243

McHutchison
Attn: Denise Pisaniello/Suzanne Kiefte
PO Box 92170
Carol Stream, IL 60197-7229

Monrovia Nursery Company
Attn: Lilliam Dixson
P.O. Box 101003
Atlanta, GA 30392-1003

Nets Trailer Leasing of Texas LLC
1810 River Road
Burlington, NJ 08016

P's Plant Farm, LLC
6694 US HWY 79W
Jacksonville, TX 75766

Pindstrup Mosebrug A/S
**Pindstrup, DK-8550**
**Romgaard**
**Denmark**

PLM Trailer Leasing, Inc.
LOCKBOX #776996
350 E Devon Avenue
Itasca, IL 60143

Small Business Administration
Acct: xxxxxx402
409 3rd St., SW
Washington, DC 20416

Triple P Farms, LLC
PO Box 366
New Summerfield, TX 75780

TVI
178 Abbey St.
Massapequa Park, NY 11762

Ball Horticultural Company
c/o Joseph H. Huston, Jr.
Stevens & Lee
919 North Market St., Ste. 1300
Wilmington, DE  19801

**INTEGRATED BOTANICS:**

ABAA Transportation
1700 Martinique Dr.
Mansfield, TX 76063-8546

Agrinomix
300 Creekside Dr.
Oberlin, OH 44074-1272

AmeriGas - Arlington
PO Box 660288
Dallas, TX 75266-0288

Ball Horticultural
622 Town Road
ATTN: Kate Walsh
West Chicago, IL 60185-2698

Bellpark Horticulture
Unit 120-19288-22nd Ave.
**Surrey BC V3Z 3S6 Canada**

Blackmore Company Inc.
10800 Blackmore Ave.
Belleville, MI 48111-2500

BWI
PO Box 990
Nash, TX 75569-0990

CRS Supply Group
10103 Ullswater Cove
ATTN: Clay Crider
Austin, TX 78750-3919

Equipment Depot
PO Box 209004
Dallas, TX 75320-9004

Express Seed Company
51051 US HWY 20
ATTN: Barb Gullet
Oberlin, OH 44074-1253

Grower Direct Supply Inc.
Attn: East West Bank
20607-1 Amar Road
Walnut, CA 91789-5049

Helena Chemical Company
PO Box 846350
Dallas, TX 75284-6350

Ivy Garth Seeds
8422 Mayfield
Chesterland, OH 44026-2524

Labels Etc. Inc.
P.O. Box 2701
Conroe, TX 77305

McHutchison
Attn: Denise Pisaniello
PO Box 92170
Elk Grove Village, IL 60009-2170

Suez WTS Services USA, Inc.
4545 Patent Road
Norfolk, VA 23502-5604

United States Treasury
Internal Revenue Service
Cincinnati, OH 45999-0009

Whitley Penn
640 Taylor St., Ste. 2200
Fort Worth, TX 76102-4845

**WOODBRIDGE:**

Antonio 'Tony' Yzaguirre, Jr.
Tax Assessor Cameron Cty Tax Ofc.
P.O. Box 952
Brownsville, TX 78522-0952

Gary B. Barber
Smith County Tax - Assessor Collect
P.O. Box 2011
Longview, TX 75602

Richard Rozier
Tax Assessor Collector
P.O. Box 836
111 South Vail St.
La Grange, TX 78945-2843

Richard Rozier
Tax Assessor Collector
109 S. Jackson Rm T125
Waxahachie, TX 75165-3745

Scott Porter
Johnson County - Scott Porter
#2 Mill Street, Suite B PO Box 75
Cleburne, TX 76033-0075

Southland Property Tax Consultants
421 W. 3rd St., Suite 920
Fort Worth, TX 76102-3752

Wendy Burgess
Tax-Assessor-Collector
P.O. Box 961018
Fort Worth, TX 76161-0018

Whitley Penn LLP
Attn Reyne Dvorak
640 Taylor St
Suite 2200
Fort Worth TX 76102-4845

**BRENTWOOD:**

Iron Horse Credit LLC
6620 Southpoint Drive South,
Suite 230
Jacksonville, FL 32216-0964

Whitley Penn LLP
Attn: Reyne Dvorak
640 Taylor St., Suite 2200
Fort Worth Tx 76102-4845

**GB2:**

Arkansas Dept. of Finc. & Admin.
2455 Washington Ave., Ste. 107
Conway, AR 72032-2732

Louisiana Dept. of Revenue
617 N. 3rd Street
Baton Rouge, LA 70802-5432

New Mexico Tax. & Revenue Dept.
1220 S. Saint Francis Dr., Ste. 220
Santa Fe, NM 87505-4226

Oklahoma Tax Commission
General Counsel S Office
100 N Broadway Ave Suite 1500
Oklahoma City Ok 73102-8601

Iron Horse Credit LLC
6620 Southpoint Drive South, Suite 230
Jacksonville, FL 32216-0964

Whitley Penn LLP
Attn Reyne Dvorak
640 Taylor St., Suite 2200
Fort Worth TX 76102-4845

**HILLISTER:**

Arkansas Dept. of Finance & Admin.
2455 Washington Ave., Ste. 107
Conway, AR 72032-2732

Iron Horse Credit LLC
Attn: Bill DiPaula
6620 Southpoint Dr. South
Suite 230
Jacksonville, FL  32216-0964

**GOVERNMENTAL ENTITIES:**

United States Attorney
Office of the United States Attorney
3rd Floor, 1100 Commerce Street
Dallas, TX 75242-1699

U.S. Small Business Administration
Office of Disaster Assistance
14925 Kingsport Rd.
Fort Worth, TX 76155-2243

Texas Comptroller Of Public Accounts
Revenue Accounting Div - Bankr. Section
PO Box 13528
Austin TX 78711-3528

Texas Workforce Commission
TEC Building Bankruptcy
101 East 15th Street
Austin, TX 78778-0001

U.S. Small Business Administration
409 3rd St., SW
Washington, DC 20416-0002

Texas Attorney General's Office
Attn: Christopher S. Murphy
Bankr & Collections Div.
P.O. Box 12548
Austin, TX  78711-2548

**NOTICE OF APPEARANCE/ECF:**

Small Business Admin - U.S. Attorney
Attn: Dawn Whalen Theiss
Office of the United States Attorney
3rd Floor, 1100 Commerce Street
Dallas, TX 75242-1699
Dawn.theiss@usdoj.gov

Ellis, Tarrant, Smith County
Linebarger Goggan Blair
c/o John Kendrick Turner
2777 N. Stemmons Frwy., Ste. 2000
Dallas, TX  75207-2328
Dallas.banruptcy@lgbs.com

Iron Horse
c/o Andrew M. Kramer
Otterbourg P.C.
230 Park Avenue, 30th Floor
New York, NY  10169
akramer@otterbourg.com

W. Brentlinger & R. Brentlinger
c/o Joshua N. Eppich
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton St., Suite 1000
Fort Worth, TX  76102
joshua@bondsellis.com

NETS Trailer Leasing of Texas LLC
c/o Darrell W. Cook
Cook Keith & Davis
6688 No. Central Expresswy., Ste. 1000
Dallas, TX  75206
dwcook@cookkeithdavis.com

NETS Trailer Leasing of Texas LLC
c/o Stephen W. Davis
Cook Keith & Davis
6688 No. Central Expresswy., Ste. 1000
Dallas, TX  75206
stephen@attorneycook.com

Greater Nevada Credit Union
c/o Frances A. Smith
Ross, Smith & Binford, PC
700 N. Pearl Street, Suite 1610
Dallas, TX 75201
Frances.smith@rsbfirm.com

Eric T. Haitz
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton St., Suite 1000
Fort Worth, TX  76102
Eric.haitz@bondsellis.com

Johnson County
c/o Elizabeth Banda Calvo
Perdue, Brandon, Fielder
500 E. Border St., Ste. 640
Arlington, TX  76010
ebcalvo@pbfcm.com

Greater Nevada Credit Union
c/o Lisa P. Sumner
Maynard Nexsen PC
4141 Parklake Ave., Ste. 200
Raleigh, NC  27612
LSumner@maynardnexsen.com

Pindstrup Moseburg A/S
c/o Matthew T. Taplett
Pope, Hardwicke, Christie
500 W. 7th Street, Ste. 600
Fort Worth, TX  76102
mtaplett@popehardwicke.com

Los Fresnos Nursery, LLP
c/o Kevin M. Lippman, Esq.
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Ste. 4000
Dallas, TX  75201-6659
klippman@munsch.com

Texas Attorney General's Office
Attn: Christopher S. Murphy
Bankr & Collections Div.
P.O. Box 12548
Austin, TX  78711-2548
Christopher.murphy@oag.texas.gov

Fayette County Appraisal District
c/o John T. Banks
Perdue, Brandon, Fielder Collins & Mott
3301 Northland Drive, Ste. 505
Austin, TX  78731
jbanks@pbfcm.com

P's Plant Farm and Triple P Farms
Attn: Lydia R. Webb
GRAY REED
1i601 Elm St., Suite 4600
Dallas, TX  75201
lwebb@grayreed.com