

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 10, 2024**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WOODBRIDGE PARTNERS, LP, et al [1] | § | CASE NO. 24-41520 |
| | § | |
| Debtors. | § | **(Jointly Administered)** |
| | § | |
| _____ | § | **Emergency Hearing Requested** |

### INTERIM ORDER AUTHORIZING THE DEBTORS TO
### USE CASH COLLATERAL

Upon consideration of the *Emergency Joint Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Setting a Final Hearing* [Docket No. 71] (the "Motion") filed by the above-captioned debtors (each a "Debtor" and collectively, the "Debtors") for entry of an interim order (this "Interim Order"), pursuant to §§ 105 and 363 of title 11 of the United States Bankruptcy

_____

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Woodbridge Partners, L.P. (6716); Brentwood Nursery, Inc. (3393); Seville Farms, Inc. (6380); Integrated Botanics, LP (7617); GB2 Holdings, LLC (0872); and Hillister Farms, L.L.C. (5295).

93094257.4

Code (the "<u>Bankruptcy Code</u>"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "<u>Local Rules</u>") and the Procedures for Complex Cases in the Northern District of Texas (the "<u>Complex Procedures</u>"), (a) authorizing the Debtors to use the Cash Collateral (*as defined below*) of GNCU (*as defined below*) in accordance with the terms and conditions set forth herein to finance the operations of the Debtors' businesses, (b)  waiving any applicable stay (including under Bankruptcy Rule 6004), (c) scheduling a final hearing (the "<u>Final Hearing</u>"), pursuant to Bankruptcy Rule 4001, to consider entry of a final order (the "<u>Final Order</u>") granting the Motion, and (d) granting related relief, and this Court having found that the relief granted herein is in the best interests of the Debtors, their estates and their creditors; and this Court having reviewed the Motion and having heard the evidence and statements in support of the relief requested herein at a hearing before this Court on July 10, 2024 (the "<u>Interim Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing established just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefore;

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.   <u>Petition Date</u>. On May 1, 2024 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

B.   <u>Joint Administration</u>.  On May 13, 2024, this Court entered an order authorizing the joint administration the Debtors' bankruptcy cases for administrative purposes (collectively, the "<u>Case</u>").

C.   <u>Debtors-in-Possession</u>.  Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.  No trustee or examiner has

been appointed in these bankruptcy cases.  No official committee of unsecured creditors has been appointed.

D.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this Case, the parties, and property pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this Case is proper with this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    <u>Notice</u>. Notice of the Motion and the Interim Hearing has been served by the Debtors on (a) the Office of the United States Trustee for the Northern District of Texas, (b) counsel for Greater Nevada Credit Union, (c) secured creditors, (d) the holders of the twenty (20) largest unsecured claims against each Debtor, (e) the Internal Revenue Service, (f) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and (g) any such other government agencies to the extent required by the Bankruptcy Rules and the Local Rules.

F.    <u>Prepetition Indebtedness</u>. Subject to the provisions of paragraph 17 of this Order, the Debtors stipulate to the following: Prior to the Petition Date, Debtors entered into two loan agreements with Greater Nevada Credit Union ("<u>GNCU</u>"), including:  (a) that certain Loan Agreement and Promissory Note, dated August 16, 2018, in the principal amount of $15,000,000, by and between GNCU as lender, and Seville, Woodbridge, Hillister, Brentwood, IBOT, GB2, Quick Turn Merchandising, L.P. ("<u>Quick Turn</u>"), Robert Brentlinger and William Brentlinger as borrowers (the "<u>GNCU/USDA Loan</u>"); and (b) that certain Business Loan Agreement and Note, dated August 16, 2018, in the original amount of $2,200,000, by and between GNCU as lender, and Seville, Hillister, Woodbridge, IBOT, and Quick Turn as borrowers, and Brentwood, Robert Brentlinger and William Brentlinger as guarantors (the "<u>GNCU/SBA Loan</u>" and together with the GNCU/USDA Loan, the "<u>GNCU Loans</u>" and the GNCU Loans, together with all related credit and security documents, the "<u>GNCU Loan Documents</u>").  To secure payment of the GNCU Loans, the

Debtors granted GNCU liens and security interests (collectively, the "GNCU Prepetition Liens") in certain real and personal property including cash collateral ("Cash Collateral") as defined in the various GNCU Loan Documents (the "Prepetition Collateral"). The GNCU Prepetition Liens constitute valid and perfected liens on the Prepetition Collateral.

G.      Subject to the provisions of paragraph 17 of this Order, the Debtors further stipulate to the following: Certain of the Debtors also entered into pre-petition loan agreements and security agreements with the U.S. Small Business Administration ("SBA") and Iron Horse Credit, LLC "Iron Horse"). Specifically, Seville, Woodbridge, Hillister, Brentwood, IBOT, GB2 and Quick Turn as borrowers, Iron Horse as lender, and Robert Brentlinger and William Brentlinger as guarantors, entered into a Credit and Security Agreement, dated January 1, 2020 (as subsequently amended) in the maximum amount of $12,000,000 (the "Iron Horse Loan"). Pursuant to that certain Intercreditor Agreement dated January 21, 2020 between GNCU and Iron Horse, GNCU agreed that Iron Horse held a security interest in inventory senior to GNCU, and Iron Horse agreed that GNCU held a security interest in equipment senior to Iron Horse.

H.      Subject to the provisions of paragraph 17 of this Order, the Debtors further stipulate to the following: Seville also entered into that certain Loan Authorization and Agreement, and Promissory Note, dated May 17, 2020, as borrower, in the principal amount of $150,000, with the U.S. Small Business Administration ("SBA") as lender ("SBA Disaster Loan"). In connection therewith Seville executed that certain Security Agreement dated May 17, 2020, granting SBA a security interest certain personal property of Seville.

I.      The Debtors represent that, prior to the Petition Date, they sold inventory and equipment with proceeds paid to either Iron Horse or GNCU as the respective senior secured lender as well as operating expenses in the ordinary course of business. The Debtors further represent that, as of the Petition Date, none of the Debtors held any collateral relating to the SBA

Disaster Loan or Iron Horse Loan that is of any material value and not otherwise subject to the senior lien of GNCU.[2]

J.      GNCU asserts a secured claim with respect to the GNCU/USDA Loan in the amount of $15,194,329.54 and with respect to the GNCU/SBA Loan $2,289,138.22, as of the Petition Date against each Debtor.

K.      Subject to the provisions of paragraph 17 of this Order, the Debtors further stipulate to the following: All of the Debtors' cash, including the cash in its deposit accounts and other accounts, wherever located, to the extent it is GNCU Prepetition Collateral or proceeds thereof, constitutes Cash Collateral of GNCU.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in § 363 of the Bankruptcy Code, in or on which GNCU has a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), and shall include, without limitation: (a) all cash proceeds arising from the collection, sale, lease, or other disposition, use or conversion of any of the Debtors' property, insurance policies, or in or on which GNCU has a lien or a replacement lien, whether as part of the GNCU Prepetition Collateral or pursuant to an order of this Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Case, or arose or was generated thereafter; (b) all of the respective deposits, refund claims and rights in retainers of the Debtors on which GNCU has a lien or replacement lien, whether as part of the GNCU Prepetition Collateral or pursuant to an order of this Court or applicable law or otherwise; and (c) the proceeds of any sale of GNCU Prepetition Collateral.  Notwithstanding anything to the contrary, Cash Collateral shall not include any cash subject to a valid and perfected senior liens, if any, held by Iron Horse or the SBA.

---

[2]      Any remaining inventory of Seville Farms has de minimis value.

L.      <u>Entitlement to Adequate Protection</u>. GNCU is entitled, pursuant to sections 361, 362(c)(2), 363(e) and 364(d)(l) of the Bankruptcy Code, to adequate protection of its interests in the GNCU Prepetition Collateral, including Cash Collateral, to the extent such interests are valid, perfected, and non-avoidable.

M.      <u>Need for Use of Cash Collateral</u>. The Debtors require use of Cash Collateral to preserve the value of Debtors' businesses, assets and properties, satisfy payroll obligations and other necessary working capital and general corporate purposes of the Debtors consistent with the Budget attached hereto as **<u>Exhibit A</u>**, and in connection with the request for final approval, to pay necessary and reasonable fees incurred in connection with this Case.  If the Debtors do not obtain immediate interim authorization to use Cash Collateral, the Debtors and their estates, will suffer immediate and irreparable harm. The use of the Cash Collateral is therefore of the utmost significance and importance to the preservation and maintenance of the value of the Debtors and their estates.

N.      <u>Consent to Use Cash Collateral</u>. GNCU consents to the use of Cash Collateral in accordance with the Budget; *provided*, *however*, that (1) such consent is expressly conditioned upon the entry of this Interim Order, (2) such consent shall not be deemed to extend to any debtor-in-possession financing, (3) such consent shall not be deemed a basis to deny or impair GNCU's entitlement to adequate protection, and (4) such consent shall be of no force and effect in the event this Interim Order is not entered or is vacated or modified in any respect without the consent of GNCU.

O.      <u>Good and Sufficient Cause Shown</u>. Good cause has been shown for the entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity through the use of Cash Collateral is vital to the Debtors' estates and creditors.  Use of Cash Collateral will enable the Debtors to preserve the value of their estates. Among other things, entry of this Interim Order is necessary to maintain and maximize the value of the Debtors' assets and to avoid

immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of the Debtors, their estates and its creditors.

P.       <u>Good Faith</u>. This Interim Order has been the subject of extensive negotiations conducted in good faith and at arm's length between and among the Debtors and GNCU. Any financial accommodations made to the Debtors by GNCU pursuant to this Interim Order shall be deemed to have been extended by GNCU in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and GNCU shall be entitled to all protections and benefits afforded thereby.

Q.       <u>Immediate Entry of Interim Order</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's docket in this Case.

R.       Based upon the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor, this Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors. Based upon the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.       The Motion is GRANTED, on an interim basis, as set forth herein.

2.       Based on the record presented to this Court at the Interim Hearing, the terms of the Debtors' proposed use of the Cash Collateral are fair and reasonable, and reflect the exercise of

prudent business judgment by the Debtors and their respective officers and directors consistent with their fiduciary duties.

3.      The Court approves the use of Cash Collateral in accordance with the Budget, except for professional fees for July, and with respect to budgeted expenses in August, the authorization through the time of the Final Hearing is limited to those expenses that are actually incurred in the ordinary course of business.   The usage of Cash Collateral for budgeted amounts of professional fees will be determined at the Final Hearing.

4.      The Budget may be modified provided that the Debtors obtain the written consent of GNCU, without further order of this Court, upon the filing of a copy of the modified Budget with this Court and each such Budget shall be referred to herein as a "**Budget**".   The Debtor's use of Cash Collateral may vary monthly by 10% on any line item basis (other than with respect to the amounts set forth in the Budget for taxes and utility expenses which the Debtors are authorized to pay in full in the amount reflected on any bill for taxes or utility services incurred); *provided* that the Debtors' use of Cash Collateral on an aggregate basis does not vary from the aggregate amount authorized in the Budget.

5.      *Carve-Out.*  GNCU has agreed to a Carve-Out of its GNCU Prepetition Collateral equal to the sum of the amounts provided for as follows ( the "Carve-Out"): (a) all fees required to be paid to the clerk of the Court or any claims and to the Office of the U.S. Trustee under section 1930(a)(6) of title 28 of the United States Code; (b) all court-approved accrued and unpaid fees, disbursements, costs, and expenses (the "Allowed Professional Fees") incurred by professionals or professional firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code and any statutory committee (each, a "Committee") appointed in these chapter 11 cases pursuant to section 1103 of the Bankruptcy Code (collectively, the "Professionals" or "Professional Persons"), which Allowed Professional Fees: (i) are allowed by this Court, at any time, whether by

interim order, procedural order, or otherwise; (ii) were incurred (regardless of when invoiced or applied for) on or after the Petition Date, and prior to the Termination Date (*defined below*), and (iii) are provided for in the Approved Budget, with which the Debtors shall use reasonable best efforts to comply, or to which GNCU has otherwise expressly consented; and (c) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $80,000.00 for all such Professionals, incurred after the first business day following delivery by GNCU of the Termination Notice (*as defined herein*), to the extent allowed at any time, whether by interim order, procedural order, or otherwise.  All Carve-Out payments shall be subject to the provisions of 11 U.S.C. § 327, 11 U.S.C. § 329 and 11 U.S.C. § 330.  Notwithstanding anything to the contrary in this Interim Order or any subsequent interim or final order relating to use of Cash Collateral, (a) the Carve-Out (including any amendment or modification thereto) shall be reduced dollar-for-dollar by such amount of Debtors' post-petition net cash that the Court finds is proceeds of GNCU's Prepetition Collateral; and (b) Allowed Professional Fees shall be paid only to the extent cash is available after (i) the sale of the Debtor's real or personal property pursuant to a confirmed chapter 11 plan of reorganization and/or liquidation or section 363 of the Bankruptcy Code.  GNCU reserves the right to object to any application for professional fees.

6.      Subject to the Carve-Out, the consent of GNCU to the Budget shall not be construed as a commitment to permit the use of Cash Collateral after the occurrence of an Event of Default (*as defined below*), regardless of whether the aggregate funds shown on the Budget have been expended after the date of default.

7.      Except in the ordinary course of business or as expressly authorized by an order of this Court, and in either case, only as set forth in the Budget, as applicable, the Debtors shall not make any advances to any person or entity including, without limitation, any affiliate of the Debtors.

8.      Any amendments, supplements, or modifications to the Budget must be consented to in writing by GNCU, prior to the implementation thereof, and shall not require further notice, hearing, or court order. Nothing herein shall prevent the Debtors and GNCU from authorizing the use of Cash Collateral for additional expenses upon such other terms and conditions as may be mutually agreed upon.

9.      GNCU (a) may assume the Debtors will comply with the Budget, (b) shall have no duty to monitor such compliance, and (c) shall not be obligated to pay (directly or indirectly from the GNCU Prepetition Collateral or otherwise) any unpaid expenses incurred or authorized to be incurred pursuant to the Budget, except as required by this Interim Order.

10.     As adequate protection for the use of Cash Collateral, GNCU is hereby granted adequate protection as follows:

(i)      <u>Replacement Liens</u>. Subject to any otherwise unavoidable and duly perfected liens existing on the Petition Date, and to the extent of any diminution in value of GNCU's interest in the Prepetition Collateral from and after the Petition Date, GNCU is hereby granted continuing, valid, automatically perfected nonavoidable and enforceable replacement liens (the "<u>Replacement Liens</u>"), in and upon all of the assets (and proceeds thereof) of the Debtors described in the GNCU Loan Documents, including but not limited to, accounts receivable, and Cash Collateral, whether such property (or proceeds thereof) was owned on the Petition Date or acquired by any Debtor after the Petition Date (excluding all causes of action under chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>").  The Replacement Liens granted herein: (a) are in addition to the GNCU Prepetition Liens; (b) are and shall be valid, perfected, enforceable, and effective as of the date of the entry of this Interim Order without further action by the Debtors or GNCU, and without the necessity of the execution, filing, or recordation of

any financing statements, security agreements, mortgages, or other documents; (c) shall secure the payment of indebtedness to GNCU to the fullest extent of the law, of the Cash Collateral and any other GNCU Prepetition Collateral; and (d) except for *ad valorem* property taxes, shall not hereafter be subordinated to or made *pari passu* with any other lien or security interest arising after the Petition Date under Bankruptcy Code section 364(d) or otherwise, absent the consent of GNCU.  The Replacement Liens shall have the same priority as existed on the Petition Date.  If, however, GNCU, in its sole discretion, shall determine to file any such financing statements, mortgages, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the automatic stay is hereby lifted to allow the filing and recording of a certified copy of this Interim Order or any such financing statements, mortgages notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded on the date of this Interim Order.

(ii)     Adequate Protection Superpriority Claims. As further adequate protection of the interests of GNCU in the GNCU Prepetition Collateral against any diminution in value of such interests caused by a failure of adequate protection under § 507(b) of the Bankruptcy Code, GNCU is hereby granted, subject to the Carve-Out, and to the extent  of  any diminution in value of GNCU's interest in the Prepetition Collateral from and after the Petition Date, as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each Debtor's  Case  and  any  Successor  Cases  (the "Adequate Protection Superpriority Claims").

(iii)     Priority of the Adequate Protection Superpriority Claims. Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever; *provided, however*, that

the Adequate Protection Superpriority Claims shall be subject to the Carve-Out. Notwithstanding any provisions of the Interim Order, no Adequate Protection Liens shall attach to, and no Adequate Protection Superpriority Claims shall be recoverable from Avoidance Actions unless otherwise ordered by this Court.

(iv)    <u>Payment of GNCU Costs and Expenses</u>.  All reasonable out-of-pocket costs and expenses of GNCU, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses, shall be paid from the proceeds of the sales of the Collateral so long as the liquidated value of the Collateral exceeds the outstanding amount of the GNCU Loans as provided under § 506(a) of the Bankruptcy Code.

(v)    <u>Reporting</u>.  Debtors shall timely provide GNCU, the Committee, if appointed, and the U.S. Trustee with (a) a monthly report comparing actual collections and expenditures (by expense category) on a cash basis to those set forth in the Budget (a "<u>Reconciliation Report</u>"); (b) monthly financial statements to be delivered to GNCU not later than twenty (20) days after the conclusion of each month in which any Debtor uses Cash Collateral, (c) all documents and information submitted by Debtors to the United States Trustee, and (d) upon the reasonable request of GNCU, such other information pertaining to each Debtor's operations, financial affairs, and the GNCU Prepetition Collateral.

(vi)        Access to Collateral.  Upon the request of GNCU, the Debtors shall permit

GNCU, respectively, reasonable access to the GNCU Prepetition Collateral and each

Debtor's books and records to conduct inspections and audits.

(vii)       Successor Case.  The adequate protection granted to GNCU in this order,

including without limitation the Replacement Liens, shall be enforceable against the

Debtors, their estates, and any successors thereto, including without limitation, any trustee

or other estate representative appointed in this Chapter 11 case, any case under Chapter 7

of the Bankruptcy Code upon a conversion, or in any other proceeding superseding or

related to any of the foregoing (collectively, the "**Successor Case**").

(viii)      No Avoidance of Replacement Liens.  The Replacement Liens shall not be

subject to sections 510, 549, or 550 of the Bankruptcy Code and shall not be subject to

subordination, impairment, or avoidance for all purposes in this Case and any Successor

Case.

11.     From the Petition Date to the Termination Date, the Debtors shall not in any way

prime GNCU's GNCU Prepetition Liens by offering a subsequent lender or any party-in-interest

(including any party-in-interest which may file an administrative expense claim) a superior or *pari*

*passu* lien or claim with respect to the GNCU Prepetition Collateral pursuant to section 364(d) of

the Bankruptcy Code, or otherwise.

12.     The Debtors' right to use the Cash Collateral on a consensual basis pursuant to this

Interim Order shall terminate (the date of any such termination, the "Termination Date") on the

earliest of the following: (a) consummation of a plan of reorganization and/or liquidation in this

Case; (b) failure of the Debtor to file a plan of reorganization and/or liquidation by August 1, 2024;

or (c) upon written notice by GNCU to the Debtors after the occurrence and continuance of any of the following events ("Events of Default") beyond any applicable grace period:

(i)      Failure of the Debtors to comply in any material respect with the terms of this Interim Order and such failure continues without remedy for more than ten (10) business days after written notice thereof is provided to the Debtors as required herein;

(ii)      Granting, creating, incurring or suffering to exist by any Debtor any liens or security interests other than: (A) those granted pursuant to this Interim Order; (B) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (C) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (D) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (E) any other liens or security interests that are senior to the GNCU Prepetition Liens, unless GNCU otherwise consents;

(iii)      Entry of any order reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the written consent of GNCU; unless otherwise consented to by GNCU

(iv)      Entry of an order granting relief from the automatic stay to the holder or holders of any security interest (other than GNCU) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any piece of real estate owned by any Debtor;

(v)      From the Petition Date to the Termination Date, the creation of any claims or charges, or the entry of any order of this Court authorizing any claims or charges, other

than as permitted under this Interim Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the GNCU Prepetition Loans, or there shall arise or be granted by this Court (A) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code, including the 507(b) Claims, or (B) any lien on the GNCU Prepetition Collateral or Post-Petition Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in the GNCU Loan Documents or in this Interim Order (but only in the event specifically consented to by GNCU), whichever is in effect;

(vi)     Any filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the GNCU Prepetition Liens securing the Pre-Petition Loans or asserting any other cause of action against and/or with respect to the Pre-Petition Loans or the GNCU Prepetition Collateral, except as to application of payments and payoff amounts due and owing thereunder;

(vii)    Dismissing or converting this proceeding to a Chapter 7 case, or appointing a Chapter 11 Trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); *provided* that the appointment by this Court of a trustee or other fiduciary of any Debtor's estate for the limited purpose of investigating, commencing or prosecuting Avoidance Actions on behalf any Debtor's estate shall not constitute a default under this subparagraph;

(viii)    Terminating or reducing by the Court the period pursuant to section 1121 of the Bankruptcy Code during which any Debtor has the exclusive right to file a plan or plans and solicit acceptances thereof;

13.    If any Debtor defaults under the terms of this Interim Order, the Debtors are entitled to written notice from GNCU ("Termination Notice"). The Termination Notice shall be sent by GNCU to proposed counsel for the Debtor, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102 (Attn: Katherine Hopkins and Nancy Ribaudo) and counsel for the Committee, if appointed.  If the default is not cured within ten (10) business days from the date such notice is provided, the Debtors' authority to use Cash Collateral under the terms of this Interim Order shall automatically terminate.

14.    Adequate Protection Reservation. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to GNCU hereunder is insufficient to compensate for any diminution in value of its interests in the GNCU Prepetition Collateral during the Case or any Successor Cases.

15.    Modification of Automatic Stay. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (i) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (ii) permit the Debtors to perform such acts as GNCU may reasonably request to assure the perfection and priority of the liens granted herein; (iii) permit the Debtors to incur all liabilities and obligations to GNCU under this Interim Order; and (iv) authorize the Debtors to pay, and GNCU to retain and apply, payments made in accordance with the terms of this Interim Order.

16.     Upon entry of this Interim Order by this Court, the terms of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, GNCU, all other creditors of the Debtors, any Committee, and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or any fiduciary hereafter appointed in this Case, any Successor Case, or upon dismissal of this Case or Successor Case.

17.     Notwithstanding the foregoing, and in accordance with the Complex Procedures, all parties in interest, other than the Debtors, shall have seventy-five (75) days from entry of this Interim Order, and as to an official committee appointed under 11 U.S.C. § 1102, no more than ninety (90) days from the Petition Date, to investigate, challenge and not be bound by the Debtors' stipulations as to the validity and perfection of the GNCU Prepetition Liens on the Prepetition Collateral by filing a complaint or motion seeking authority to commence litigation as a representative of the estate.

18.     The terms and conditions of this Interim Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any plan of reorganization and/or liquidation in the Case; (b) converting this Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing this Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing any of this Case or Successor Case.

19.     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any adequate protection obligations owing to GNCU incurred prior to the actual receipt by GNCU, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby.  Notwithstanding any such reversal, modification, vacation or stay, any use of

GNCU Prepetition Collateral, including Cash Collateral or adequate protection obligations owing to GNCU by any Debtor prior to the actual receipt by GNCU, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and GNCU shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code and this Interim Order with respect to all uses of Collateral, including Cash Collateral, and the adequate protection obligations owing to GNCU.

20.     The failure or delay by GNCU to exercise any rights and remedies under this Interim Order shall not constitute a waiver of any of the rights of such party hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against the Debtor or any collateral shall not be construed to limit any further exercise of such rights and remedies.

21.     This Court hereby expressly retains jurisdiction over all persons and entities, to enforce the terms of this Interim Order and to adjudicate any and all disputes in connection herewith.

22.     The Debtors shall file and serve the proposed Final Order on the appropriate parties in interest no later than July 29, 2024.

23.     The Final Hearing on the Motion shall be held on August 6, 2024, at 1:30 p.m., prevailing Central Time.  Any objections or responses to entry of a Final Order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on August 1, 2024, and shall be served on:  (a)  proposed counsel to the Debtor, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102 (Attn: Katherine Hopkins and Nancy Ribaudo); (b) counsel to any statutory committee appointed in this Case; (c) counsel to GNCU, Frances A. Smith, Ross, Smith and Binford, PC, 700 N. Pearl Street, Suite 1610, Dallas, TX 75201; and (d) the Office of the United States Trustee for the Northern District of Texas, Earle Cabell Federal

Building, 1100 Commerce Street, Room 976, Dallas, Texas 75242.  Witness and exhibit lists

in connection with the Final Hearing shall be filed and exhibits shall be exchanged on or before

4:00 p.m., prevailing Central Time, on August 2, 2024, and shall be served on: (a)  proposed

counsel to the Debtor, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth,

Texas 76102 (Attn: Katherine Hopkins and Nancy Ribaudo); (b) counsel to any statutory

committee appointed in this Case; (c) counsel to GNCU, Frances A. Smith, Ross, Smith and

Binford, PC, 700 N. Pearl Street, Suite 1610, Dallas, TX 75201; (d) the Office of the United

States Trustee for the Northern District of Texas, Earle Cabell Federal Building, 1100

Commerce Street, Room 976, Dallas, Texas 75242; and (e) any party who has filed a response or

objection to the Motion.  In the event no objections to entry of the Final Order on the Motion are

timely received, this Court may enter such Final Order without need for the Final Hearing.

### # # # END OF ORDER # # #

# EXHIBIT A

# BUDGET

| | May-24 | Actual - May 24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BOA Seville Farms | $10,316.72 | $10,316.72 | | | | | | | | | | |
| BOA Woodbridge | $130,002.59 | $130,002.59 | | | | | | | | | | |
| Brentwood Nursery | $14,367.90 | $14,367.90 | | | | | | | | | | |
| GNCU WBP (2786) | $44,477.19 | $44,477.19 | | | | | | | | | | |
| GNCU WBP (2760) | $13,716.03 | $13,716.03 | | | | | | | | | | |
| Sale Proceeds | $222,357.15 | $222,357.15 | | | | | | | | | | |
| | $415,237.58 | $415,237.58 | | | | | | | | | | |
| **INCOME** | | | | | | | | | | | | |
| Lease Payment | $0.00 | $0.00 | $33,100.00 | $33,100.00 | $33,100.00 | $0.00 | $0.00 | $0.00 | $0.00 | $99,300.00 | $0.00 | |
| Raw Material Sales | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Equipment and Vehicle Sales | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Land Sales | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Misc. Vendor Refunds, Insurance Rebates, etc. | $20.00 | $20.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $20.00 | $0.00 | |
| **Effective Gross Income** | $20.00 | $20.00 | $33,100.00 | $33,100.00 | $33,100.00 | $0.00 | $0.00 | $0.00 | $0.00 | $99,320.00 | $0.00 | |
| **OPERATING EXPENSES** | | | | | | | | | | | | |
| William Brentlinger Payroll | $8,280.00 | $8,280.00 | $6,500.00 | $6,500.00 | $6,500.00 | $6,500.00 | $6,500.00 | $6,500.00 | $6,500.00 | $53,780.00 | $50,000.00 | |
| Robert Brentlinger Payroll | $3,000.00 | $3,000.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $13,500.00 | | |
| Other Employee Payroll | $3,720.00 | $2,481.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $12,981.00 | | |
| Office Overhead (MS 365, Sage, Loew's, WM TA | $750.00 | $0.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $5,250.00 | $9,000.00 | |
| Utilities | $1,000.00 | $536.38 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $7,536.38 | $12,000.00 | |
| Liability Insurance | $20,505.13 | $0.00 | $8,309.69 | $8,309.69 | $8,309.69 | $8,309.69 | $8,309.69 | $8,309.69 | $8,309.69 | $58,167.83 | $50,000.00 | |
| Repair/Maintenance | $2,000.00 | $1,600.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $15,600.00 | $16,000.00 | |
| Misc. Seville tax return, bank fees, etc.) | $210.00 | $210.00 | $210.00 | $210.00 | $210.00 | $210.00 | $210.00 | $210.00 | $210.00 | $1,470.00 | $2,500.00 | |
| **Total Operating Expenses** | $39,465.13 | $15,897.38 | $21,769.69 | $21,769.69 | $21,769.69 | $21,769.69 | $21,769.69 | $21,769.69 | $21,769.69 | $168,285.21 | $139,500.00 | |
| **NET OPERATING CASH FLOW** | -$39,465.13 | -$15,877.38 | $11,330.31 | $11,330.31 | $11,330.31 | -$21,769.69 | -$21,769.69 | -$21,769.69 | -$21,769.69 | -$68,965.21 | -$139,500.00 | |
| **CASH NON-OPERATING EXPENSES** | | | | | | | | | | | | |
| KHH Fees/Expenses of Case | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| LF Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| UST Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| GNCU Payment | $0.00 | $0.00 | $0.00 | $1,899.88 | $0.00 | $0.00 | $1,787.67 | $0.00 | $1,772.62 | $5,460.17 | $0.00 | |
| Accounting Fees | $0.00 | $0.00 | $20,000.00 | $0.00 | $0.00 | $0.00 | $20,000.00 | $0.00 | $0.00 | $40,000.00 | $0.00 | |
| **TOTAL CASH NON-OPERATING EXPENSE** | $0.00 | $0.00 | $20,000.00 | $1,899.88 | $0.00 | $0.00 | $21,787.67 | $0.00 | $1,772.62 | $45,460.17 | $0.00 | |
| **NET CASH FLOW** | -$39,465.13 | -$15,877.38 | -$8,669.69 | $9,430.43 | $11,330.31 | -$21,769.69 | -$43,557.36 | -$21,769.69 | -$23,542.31 | -$114,425.38 | -$139,500.00 | |
| **REMAINING CASH BALANCE** | $395,772.45 | $419,360.20 | $410,690.51 | $420,120.94 | $431,451.25 | $409,681.56 | $366,124.20 | $344,354.51 | $320,812.20 | $320,812.20 | $320,812.20 | $320,812.20 |
| **ACCRUED NON-OPERATING EXPENSES** | | | | | | | | | | | | |
| KHH Fees/Expenses of Case | $150,000.00 | $150,000.00 | $150,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $25,000.00 | | | |
| LF Fees | $40,000.00 | $40,000.00 | $20,000.00 | $10,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | | | |
| GNCU Payment | N/A | | | | | | | | | | | |
| Tax Depreciation | Unknown | | | | | | | | | | | |
| **Total Accrued Non-Operating Expenses** | $190,000.00 | $190,000.00 | $170,000.00 | $60,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $30,000.00 | | | |

KHH/LF Fees/Expenses are on Accrual Basis, i.e they are not paid until Sales of Adult Property occur. Also, this includes fees related to case, such as filing fees for petitions, motions, postage, copying, transcripts, etc.